IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TREMAYNE EDWARDS,

                Plaintiff,

v.

TIM HAINES and BRADLEY GILARDI,

                Defendants.[1]

OPINION & ORDER

16-cv-317-jdp

---

Pro se plaintiff Tremayne Edwards, a prisoner at the Wisconsin Secure Program Facility, brings this lawsuit alleging that he was verbally sexually harassed during a urinalysis at which he was forced to disrobe. The parties have filed dueling motions for summary judgment. After considering the parties' summary judgment materials, I will deny Edwards's motion for summary judgment in its entirety, and grant defendants' motion on Edwards's claim against defendant Warden Tim Haines. But I will deny defendants' motion on Edwards's claim against defendant Bradley Gilardi, one of the correctional officers who conducted the urinalysis. The case will proceed to trial on the claim against Gilardi.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials, and they are undisputed unless noted otherwise. Pro se plaintiff Tremayne Edwards is a prisoner at the Wisconsin Secure Program Facility (WSPF). Defendant Bradley Gilardi is a correctional officer at WSPF. At the times relevant to this case, defendant Tim Haines was the warden at WSPF.

---

[1] I have amended the caption to include the parties' first and last names.

On June 4, 2013, Edwards was chosen to provide a urine sample. Inmates are chosen by a random, computer-generated selection process whereby the selection personnel do not know the identity of the inmate. Under the policy in place at that time, two staff members would then instruct the inmate that he would be strip searched and that a random urinalysis (UA) would be completed. Gilardi was one of the officers present for Edwards's UA. Despite the policy stating that inmates were to be strip searched, Edwards provides testimony from two prisoners, Charles Witzel and Johnson W. Greybuffalo, stating that at the time this version of the policy was in effect, they were given less invasive pat searches before giving their urine samples.

Gilardi explains the procedure for UA tests at the time of the incident at issue here: during the strip search, the inmate would hand his clothing to the officers so that the clothing could be inspected for contraband and to ensure the inmate did not have a urine sample provided by another inmate. After the strip search was completed, officers would return the clothing to the inmate, who would put the clothing back on and then provide the urine sample.[2] At least one of the officers would watch the inmate urinate, and then take the sample cup from the inmate.[3]

Edwards's version of events is as follows. He says that after he was asked to perform a random UA, defendant Gilardi stated that "he would be performing a body contents search so get ready and show me your balls." Dkt. 1, at 1, ¶ 6. As Edwards took off his clothes, Gilardi

---

[2] The written policy provided by defendants is silent about whether an inmate would be given back his clothes before urinating. *See* Dkt. 31-1. But I take defendants to be saying that their practice was to do so.

[3] This policy was amended about a month after the incident at issue here, to require only a pat search instead of a strip search.

"kept asking me if I worked out because I look real fit and in shape and have strong thighs." *Id*., ¶ 8. Edwards asked Gilardi to stop talking to him.

Contrary to defendants' assertion that inmates were allowed to put their clothes back on before urinating, Edwards says that he "never was allowed his clothes until he was able to pee" and was "never handed his clothes back," Dkt. 37, at 1, ¶¶ 3–4, so I take him to be saying that he was forced to urinate while naked. When Edwards took the sample cup from Gilardi and began to urinate, Gilardi stared at him and said "that looks nice it is true I guess what they say about Black men." *Id*. at 1–2, ¶ 9. Edwards asked Gilardi to stop harassing him. Gilardi said, "don't tell me what to do I'm in charge." *Id*. Edwards says that he felt humiliated, embarrassed, and intimidated, and that he suffered nightmares from the incident.

Gilardi does not recall the June 4, 2013 incident, but he says that he would never make such statements to an inmate, and that he "has been trained to treat inmates with respect and to conduct strip searches and urine analysis sample collections with professionalism at all times." Dkt. 29, at 5, ¶ 17.

Edwards filed an inmate grievance about the incident, stating in part that "[t]he officers asked me to spread my buttocks and genitals I was deliberately sexually harassed." Dkt. 32-1, at 8. A Prison Rape Elimination Act investigation was conducted by non-defendant Captain Hanfeld, who concluded that the search was properly conducted under prison policy and did not violate the Prison Rape Elimination Act. The completed investigation was approved by non-defendants Security Director Sweeney and Deputy Warden Hermans.

Defendant Warden Haines had no involvement with the strip search or the UA. Although Edwards says that he sent a letter to Haines regarding the incident, Haines says that his office correspondence file does not contain a letter.

ANALYSIS

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

I granted Edwards leave to proceed on a claim that defendant Warden Haines implemented a policy mandating that inmates would be nude during UAs or failed to change the policy after being alerted to the practice. But after defendants produced facts showing that the DOC policy in place at the time did not require inmates to urinate while nude, and that Edwards's correspondence about the incident was not handled by Haines, Edwards agrees that

4

Haines should be dismissed from the case. *See* Dkt. 35, at 2. So I will grant defendants' motion for summary judgment regarding Haines.

That leaves Edwards's claim that defendant Gilardi violated his Eighth Amendment rights by harassing him while forcing him to complete his UA nude. The Eighth Amendment prohibits unnecessary and wanton infliction of pain, and forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Forced nudity violates the Eighth Amendment when it is "motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015); *see also Mays v. Springborn*, 719 F.3d 631, 633–34 (7th Cir. 2013) ("There may have been a valid penological reason for the [strip] search, yet it may not have been the reason or a reason; the reason may have been to humiliate the plaintiff.").

Edwards's version of events, which I will credit in evaluating defendants' motion, could lead a reasonable jury to conclude that Gilardi violated his Eighth Amendment rights. Edwards says that Gilardi made harassing comments to him and that he made him stay naked even after the strip search had concluded. It is difficult to see a legitimate penological purpose for forcing an inmate to remain naked following the strip search, particularly given that defendants say that their practice was to let inmates get dressed before urinating. And Edwards also provides evidence suggesting that WSPF's de facto policy around that time was *not* to strip search inmates pre-UA: two inmates say that their UAs around this time were conducted without a strip search. Defendants say that the policy was amended about a month *after* Edwards's UA to eliminate strip searches, but Edwards's version suggests that strip searches were not

mandatory at the time of his UA. These facts raise a reasonable inference that Gilardi conducted an unnecessary strip search, forced Edwards to remain naked, and made harassing comments, all for the purpose of humiliating Edwards rather than for a legitimate prison purpose.

Defendants argue that at least part of Edwards's version should not be credited. They say that because Edwards did not mention Gilardi's harassing comments in his inmate grievance, his "[s]elf-serving affidavit[] without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O' Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). This argument is frivolous. For starters, they overstate the inconsistency of Edwards's story. In the grievance, Edwards stated that he "was deliberately sexually harassed," Dkt. 32-1, at 8, which could encompass harassing statements as well as unwanted touching.

But regardless of a potential inconsistency, the Seventh Circuit has explicitly overruled *Slowiak*, and has "repeatedly emphasized over the past decade [that] the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 and n.1 (7th Cir. 2013). In short, parties are free to testify about events of which they have firsthand knowledge. In rare circumstances "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it." *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997). But the state does not even attempt to develop such an argument with regard to Edwards's testimony, and it is difficult to theorize what they could have argued about this issue: his story is plausible, even though disputed, regardless of how you interpret his grievance. Gilardi is free to attempt to use Edwards's prior statements against him at trial, but Edwards's declarations are sufficient to place into dispute what happened during the incident.

Defendants also contend Edwards does no more than "make[] generalized allegations that Officer Gilardi made sexual comments during the search," which merely amounts to verbal harassment that fails to violate the Eighth Amendment. Dkt. 28, at 8 (citing *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000)). As I stated above, Edwards has provided more evidence than just the harassing comments: he also states that he was forced to urinate while naked and that the use of strip searches were not the de facto policy of the prison. But even if the only evidence Edwards had produced were Gilardi's comments, defendants' bare citation to *DeWalt* would be insufficient to grant Gilardi summary judgment considering that the Seventh Circuit has more recently concluded that in limited circumstances, verbal abuse can constitute cruel and unusual punishment under the Eighth Amendment. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). One would expect the state to explain why the verbal harassment here is more similar to the conduct in *DeWalt* as opposed to the allegations in *Beal*. But the state does not develop this argument in any meaningful way, so I will disregard it. I will deny defendants' motion for summary judgment regarding Edwards's claim against Gilardi.

But this does not mean that Edwards is entitled to summary judgment. In evaluating Edwards's motion, I must credit defendants' version of the facts. Defendants contend that Gilardi conducted the UA according to policy, although their evidence for this is scant given that Gilardi does not remember the incident. They cite the policy in place at the time, which required a pre-UA strip search. Gilardi says that he would never make the harassing comments attributed to him, and he says that he was trained to respect inmates and act with professionalism. He stops short of explicitly saying that he would never force an inmate to keep his clothes off while urinating, but that is an inference I draw from his other statements. I will deny Edwards's motion for summary judgment on this claim.

Because Edwards does not allege that he sustained a physical injury from Gilardi's conduct, this case will proceed to trial for nominal and punitive damages only. *See* 42 U.S.C. § 1997e(e) (prisoner may recover damages for emotional harm only if he proves that he suffered a physical injury because of defendants' conduct). I will follow this order with an order setting forth some trial preparation instructions for Edwards's benefit.

ORDER

IT IS ORDERED that:

1. Plaintiff Tremayne Edwards's motion for summary judgment, Dkt. 17, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 27, is GRANTED with respect to plaintiff's claim against defendant Tim Haines and DENIED with respect to plaintiff's claim against defendant Bradley Gilardi.

3. Defendant Haines is DISMISSED from the case.

Entered November 13, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge